IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

                              Plaintiff,

v.

TELLY KINGCADE,

                              Defendant.

REPORT AND
RECOMMENDATION

07-cr-142-bbc
_____

## REPORT

The grand jury has charged defendant Telly Kingcade with possessing over 200 grams (eight ounces) of crack cocaine and unlawfully possessing long guns and pistol and ammunition. Madison police obtained most of the evidence against Kingcade during execution of search warrants for his apartment and for a small safe cached in an acquaintance's apartment. Before the court is a set of motions to quash both warrants and suppress all derived evidence. *See* dkts. 15, 16 and 43. Not satisfied with the efforts of his sequentially appointed attorneys, Kingcade recently attempted to file some handwritten suppression motions of his own, *see* dkts. 48-50 (sealed), but was rebuffed by the court because he is represented by counsel, *see* March 7, 2008 letter in the correspondence file.[1]

Kingcade argues that there was no probable cause to support the warrant for his residence and that the good faith doctrine cannot rescue the warrant. He seeks suppression of the crack cocaine found in his safe on the basis that police took it from his acquaintance's apartment without first obtaining a warrant, then provided the court with the wrong apartment number for

---

[1] These suppression motions and the issues raised in them are the crux of Kingcade's dissatisfaction with both of his appointed attorneys. Although these issues are not actually before the court and do not require a ruling, at a March 21, 2008 *ex parte* hearing with Kingcade and Attorney Rob Ruth at which we addressed Kingcade's request for a third appointed attorney, I allowed Kingcade to re-iterate his Fourth Amendment concerns and add some new ones alleging police misconduct, then explained to him in detail why, from the court's perspective, counsel's failure to raise these issues in their motions was not ineffective assistance that required appointment of a third attorney.

that acquaintance's residence when presenting their warrant application to the circuit court. The government opposes all three motions to suppress. For the reasons stated below, I am recommending that the court deny all three motions.

The two challenged warrants speak for themselves and can be found attached to dockets 15-16. The first warrant, issued on October 3, 2007 in Dane County Circuit Court, is directed toward Kingcade's residence at 3201 Ridgeway, Apartment 6, in Madison. Madison Police Detective Kevin Linsmeier was the affiant. The probable cause portion of his affidavit relies on three inter-related sources of information. First, Linsmeier reports that during the week of October 1, 2007, a confidential informant reported that a man named Telly Kingcade had sold the informant cocaine, and that Kingcade lived at 3201 Ridgeway Avenue on the second floor. Second, on October 3, 2007, Madison Police Officer Denise Markham took her trained and certified drug-detecting "K-9 partner" Sadie to 3201 Ridgeway Avenue to investigate. At the doorway of Apartment 6 on the second floor Sadie alerted to the presence of the odor of controlled substances emanating from that residence. Sadie did not alert to Apartment 5 or the hallway areas of the first and second floors. Detective Linsmeier reported Sadie's training and certification as a qualified narcotics detection dog. Third, Detective Linsmeier spoke with the apartment building manager, Susan Robinson, who stated that Telly Kingcade was the sole leaseholder for 3201 Ridgeway Avenue, Apartment 6 and that he lived there with his girlfriend Marcy Tibbs. The circuit court issued the requested warrant. During the subsequent search, police recovered a firearm and some ammunition but no controlled substances.

During the execution of this warrant, two women (Susan Robinson and Peggy Revels) approached the officers to volunteer that there might be a safe belonging to Telly Kingcade in Apartment 3 of the same apartment building, where Theodore Robinson lived. Detective

Linsmeier visited Theodore Robinson, the resident in Apt. 3 at 3201 Ridgeway, to inquire. Robinson reported that the man he knew as Telly had asked Robinson to store a rifle in his apartment. Robinson agreed. Later, Telly asked Robinson if he could store a safe in Robinson's apartment. Robinson agreed to this as well. Because Robinson uses a wheelchair and spends most of his time in his bedroom, he leaves the front door of his apartment unlocked and does not know who comes and goes; he was not even sure if Telly ever had brought by the safe. Robinson gave police officers verbal and written consent to search his apartment. Officers found a small combination safe (about 13" x 16" x 17") in the back bedroom closet. Robinson reported that this safe was not his and probably belonged to Telly, who Robinson knew resided upstairs in Apartment 6. Robinson told police that he did not want that safe in his apartment. Police also found two firearms that Robinson denied owning. Officer Markham and Sadie investigated the safe; Sadie alerted to the odor of narcotics emanating from the safe. Officers seized the safe and firearms and took them to the police station.

       Officer Linsmeier then applied to the county circuit court for a search warrant authorizing police to open the safe. In his search warrant affidavit, Detective Linsmeier related the facts outlined above, but he mistakenly reported that Robinson lived in Apartment 1 rather than Apartment 3. Detective Linsmeier added some additional detail about the large amount of crack cocaine that his informant had bought from Telly Kingcade. The circuit court issued the warrant, police opened the safe and found the cocaine base charged against Kingcade in the instant federal prosecution.

## ANALYSIS

**I. The Warrant for Kingcade's Residence**

Kingcade claims that Detective Linsmeier's affidavit did not provide probable cause to support the warrant issued to search Kingcade's apartment. Of particular concern is his contention that the narcotics detection dog alerted to his apartment, which did not contain any drugs, but failed to alert to Apartment 3, in which was ensconced a safe containing a half-pound of crack.

Probable cause exists when, given all the circumstances known to the agents, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Newsom*, 402 F.3d 780, 782 (7th Cir. 2005). Probable cause lies somewhere before the 50% threshold. *Edmond v. Goldsmith*, 183 F.3d 659, 669 (7th Cir. 1999)(Easterbrook, J., dissenting)*; see also United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (probable cause determination does not require resolution of conflicting evidence as would be required by preponderance of evidence standard). "So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists." *United States v. Parra*, 402 F.3d 752, 763-64 (7th Cir. 2005). It is not appropriate to consider each piece of evidence individually in a "divide and conquer" approach; rather the focus must be on what the evidence shows as a whole. *United States v. Caldwell*, 423 F.3d 754, 760-61 (7th Cir. 2005); *see also United States v. Olson*, 408 F.3d 366, 371-72 (7th Cir. 2005)(small tidbits of corroborative evidence in a search warrant affidavit have little weight individually, but taken together can suffice to corroborate an informant's story).

A court's determination of probable cause should be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the court reasonably could have concluded that the items to be seized were associated with the crime and located in the place indicated.  *Newsom*, 402 F.3d at 782.  Doubtful cases should be resolved in favor of upholding the warrant.  *Olson*, 408 F.3d at 372, *citing United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000).

Let's start with Sadie: a positive alert by a trained drug dog provides probable cause for a search.  *United States v. Washburn*, 383 F.3d 638, 643 (7th Cir. 2004); *United States v. Ganser*, 315 F.3d 839, 844 (7th Cir. 2003); *United States v. Limares*, 269 F.3d 794, 797-98 (7th Cir. 2001). Detective Linsmeier adequately set forth Sadie's training and track record for the court to determine that she was qualified and reliable; indeed, the implication is that in the year preceding this warrant application, Sadie was batting a thousand on search warrants.  Not so fast, insists Kingcade: if Sadie's so good, why did she alert to his apartment, in which no drugs were found, but failed to alert to Robinson's apartment, where the mother lode was cached?  It's a fair question and the court won't speculate as to an answer that might exonerate Sadie.  The salient point, as the government points out, is that at the time the police applied for their warrant, they were unaware of these things.  They cannot be held responsible for information they could not have possessed at the time they applied for their warrant.  *Cf. Washburn*, 383 F.3d at 643(when deciding whether a defendant abandoned luggage, the flow of information stops the moment the officer opens the bag).  *Id.*, quoting *United States v. Rem*, 984 F.2d 806, 811 (7th Cir. 1993).[2]

---

[2] At the March 21, 2008 *ex parte* hearing, Kingcade also voiced his suspicion that Officer Markham had falsely reported an alert by Sadie to Apt. 6 because Markham knew that this was Kingcade's apartment and the police were intent on taking him down no matter what.  However strongly held this suspicion, it

Sadie's alert, although sufficient by itself to justify the warrant, corroborated Detective Linsmeier's vague, unanchored report that an informant had bought cocaine from Kingcade at some unspecified time in the past. This untested anonymous informant, by him/herself must be deemed of unknown reliability; however, the informant's tip, once bolstered by Sadie's alert, assumes a higher degree of reliability. *Cf. United States v. Brown*, 366 F.3d 456, 460 (7th Cir. 2004). Finally, for what little it adds, the apartment manager confirmed that Kingcade did in fact reside in the apartment that the informant had reported. This is hardly a secret fact known only to insiders, but at least it established that Apt. 6 was rented by an alleged drug dealer, further bolstering Sadie's alert. *See United States v. Hobbs*, 509 F.3d 353, 361 (7th Cir. 2007)("in the case of drug dealers evidence is likely to be found where the dealers live.")

In short, the evidence presented to the court was sufficient to establish probable cause supporting the warrant that issued. Even if this were a closer case, the good faith doctrine, discussed in Section III, would rescue the evidence from suppression.

**II. The Search Warrant for the Safe**

Kingcade argues that this court should suppress the 200+ grams of crack seized from the safe in Robinson's apartment because Detective Linsmeier got the apartment number wrong in his affidavit, Robinson's consent to search his apartment was involuntary, and the police had no right to remove the safe from Robinson's apartment without first obtaining a warrant.

As the government observes, the "item to be searched" in warrant #2 was the safe, not Robinson's apartment. The warrant affidavit described that safe with accuracy and particularity,

---

still is nothing more than a suspicion. It does not come close to making the substantial showing of intentional malfeasance or reckless disregard for the truth by the police in their warrant application that would require further court action. *See Frank v. Delaware*, 438 U.S. 154, 170 (1978).

and Sadie alerted to the safe, which Robinson reported most likely belonged to Telly Kingcade, his upstairs neighbor. The fact that Detective Linsmeier reported incorrectly that Robinson lived in Apt. 1 rather than Apt. 3 is a red herring and therefore irrelevant. The government correctly characterizes this mistake as an immaterial typographical error that cannot affect the validity of the warrant. *See United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000).

Kingcade's challenge to the validity of Robinson's consent to search Robinson's apartment is another canard. The police reported that Robinson voluntarily consented to the search of his own apartment, which removes this search from the purview of the Fourth Amendment's probable cause and warrant requirements. *United States v. Parker*, 469 F.3d 1074, 1077 (7th Cir. 2006). Kingcade has not even established that he had a reasonable expectation of privacy in Robinson's apartment that would allow him to challenge the initial entry and subsequent consent search. *See Minnesota v. Carter*, 525 U.S. 83, 88 (1998). Kingcade has not established that Robinson's consent to search was not voluntary. Robinson has made no claim that his consent was coerced; indeed, it appears that he is a government witness against Kingcade in this prosecution. It would be nonsensical to litigate in pretrial motions a defendant's challenge to the voluntariness of a third party's consent to search the third party's residence when that third party has not himself challenged the search and has the capacity to do so. Kingcade's allegations that Robinson was incapable of providing consent because he was an invalid doped up on medications are unsupported and insulting.

Finally, Kingcade challenges the police removing the safe from Robinson's apartment before obtaining a warrant to open it. But the police did not remove the safe until after Sadie alerted to it, thereby establishing probable cause that it contained narcotics. Securing a container on the basis of probable cause in order to prevent the destruction or removal of evidence while

a search warrant is being sought is not itself an unreasonable seizure of that container. *See Segura v. United States*, 468 U.S. 796, 810 (1984)(securing a dwelling by locking it down and occupying it pending issuance of a warrant). Defendants and their associates are not entitled to destroy evidence while police wait for a search warrant. *Segura*, 468 U.S. at 816; *see United States v. Blackwell*, 416 F.3d 631, 633 (7th Cir. 2005).³ Indeed, because Kingcade was not present to assert an immediate possessory interest over the safe, it is not clear that police removal of the safe from Robinson's apartment, without more, even constitutes interference with that interest. *See United States v. Ward*, 144 F.3d 1024, 1031 (7th Cir. 1998)(dealing with luggage in transit on a common carrier). The bottom line is that the police did nothing unreasonable with regard to the safe that would justify suppression of the evidence found within it during the subsequent execution of the search warrant.

None of Kingcade's challenges to either warrant are persuasive, but to be thorough, I note that this is a situation in which the good faith doctrine would militate against suppression even if there were concerns about the validity of the warrants.

**III. Good Faith**

In *United States v. Leon,* 468 U.S. 926 (1984), the Court held that:

> In a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall.

---

³ Although the written reports in the court file do not reflect this, Kingcade explained to the court at the *ex parte* hearing that he was in telephonic contact with the police while they conducted their investigation in his apartment building.

> \* \* \*
> We have . . . concluded that the preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination. Deference to the magistrate, however, is not boundless.

Having so stated, the Court then held that

> [i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

*Id.* at 926.

Such determinations must be made on a case-by-case basis with suppression ordered "only in those unusual cases in which exclusion will further the purpose of the exclusionary rule." 468 U.S. at 918. When the officer's reliance on the warrant is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule because it is

> painfully apparent that the officer is acting as a reasonable officer would and should act in similar circumstances. . . . This is particularly true . . . when an officer acting with objective good faith has obtained a search warrant from a judge . . . and acted within its scope. . . . Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Penalizing the officer for the [court's] error rather than his own cannot logically contribute to the deterrence of Fourth Amendment violations.

*Id*. at 920-21.

The Court noted the types of circumstances that would tend to show a lack of objective good faith reliance on a warrant, including reliance on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or reliance on a warrant so facially deficient that the officer could not reasonably presume it to be

9

valid. *Id*. at 923. The Court observed that "when officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time." *Id*. at 924. *See also Arizona v. Evans*, 514 U.S. 1, 11-12 (1995)(reaffirming the Supreme Court's reluctance to suppress evidence obtained in good faith but in violation of a defendant's Fourth Amendment rights).

Put another way, an officer's decision to obtain a warrant is *prima facie* evidence that he was acting in good faith, and it is the defendant's burden to rebut this presumption. *United States v. Otero*, 495 F.3d 393, 398 (7th Cir. 2007). In the instant case, Kingcade has nothing but quibbles and his subjective suspicions–many of which his attorneys reasonably did not present to the court–to support his belief that the police did not seek, obtain and rely on these search warrant in good faith. As outlined above, the police had probable cause to conduct both searches, they presented their evidence to the court, and there is no proof that they made material misstatements or omitted material facts from the warrant applications. Therefore, the presumptive validity of both warrants remains intact. Suppression is not appropriate.

### RECOMMENDATION

Pursuant to 28 U.S.C. §636(b)(1)(B) and for the reasons stated above, I recommend that this court deny all of defendant Telly Kingcade's pending motions to suppress evidence.

Entered this 21st day of March, 2008.

          BY THE COURT:
          /s/
          STEPHEN L. CROCKER
          Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin 53701

| | |
|---|---|
| Chambers of<br>STEPHEN L. CROCKER<br>U.S. Magistrate Judge | Telephone<br>(608) 264-5153 |

March 21, 2008

Rita Rumbelow
Assistant United States Attorney
P.O. Box 1585
Madison, WI 53703-1585

Robert Thomas Ruth
Ruth Law Office
7 North Pinckney Street, Suite 240
Madison, WI 53703

>	Re:	United States v. Telly M. Kingcade
>		Case No. 07-CR-071-S

Dear Counsel:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the newly-updated memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before March 31, 2008, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by March 31, 2008, the court will proceed to consider the magistrate judge's Report and Recommendation.

>			Sincerely,

>			/s/

                                         S. Vogel for Connie A. Korth
                                         Secretary to Magistrate Judge Crocker

Enclosures

cc:     Honorable Barbara B. Crabb, District Judge

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

  (1) injunctive relief;

  (2) judgment on the pleadings;

  (3) summary judgment;

  (4) to dismiss or quash an indictment or information;

  (5) to suppress evidence in a criminal case;

  (6) to dismiss or to permit maintenance of a class action;

  (7) to dismiss for failure to state a claim upon which relief can be granted;

  (8) to dismiss actions involuntarily; and

  (9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation.  Any written objection must identify specifically all proposed

findings of fact and all proposed conclusions of law to which the party objects and must set forth with particularity the bases for these objections.  An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection.  Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects.  The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection.  The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions.  The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.** *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).